# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| LEE W. YEAGER, | Case No. 5:15CV399 |
| | |
| | JUDGE JOHN R. ADAMS |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| | |
| FIRSTENERGY GENERATION CORP., | |
| | |
| Defendant. | |

This matter is before the Court upon three motions: (1) Plaintiff Lee Yeager's motion for leave to amend his complaint (Doc. #22); (2) Defendant FirstEnergy Generation Corp.'s ("FirstEnergy") motion to strike Mr. Yeager's jury demand (Doc. #25); and (3) Mr. Yeager's motion to compel discovery (Doc. #30). The Court has considered the motions, responses, and replies thereto, in addition to supplemental briefing by both parties regarding the possible preclusive effect of state administrative proceedings on the proposed amendments to the complaint. For the reasons stated herein, the Court orders that: (1) Mr. Yeager's motion for leave to amend is GRANTED IN PART; (2) FirstEnergy's motion to strike the jury demand is GRANTED; and (3) Mr. Yeager's motion to compel discovery is DENIED as moot.

## I.     BACKGROUND

The instant matter arises out of Mr. Yeager's termination from an internship program with FirstEnergy. Interns in the program were asked to provide direct deposit authorization forms for their bank accounts. Mr. Yeager refused to participate in the direct

1

deposit program on the basis of his religious belief that maintaining a checking account would violate biblical prohibitions against usury. FirstEnergy informed Mr. Yeager that participation in the direct deposit program was a condition of his internship and terminated Mr. Yeager after two days.

Following his termination, Mr. Yeager filed a dual charge of religious discrimination against FirstEnergy with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). The factual basis for that charge is identical to the action now pending before this Court.

Following multiple evidentiary hearings before an OCRC Administrative Law Judge, the OCRC issued a final order concluding that FirstEnergy failed to make a reasonable effort to accommodate Mr. Yeager's religious beliefs. The final order specified that Mr. Yeager's damages were limited to "the amount [Mr. Yeager] would have received had he completed the internship, less two days' pay he received prior to his removal from the program * * *." (Doc. #29-2, PageID 230.) The OCRC found that it was "impermissibly speculative" to conclude that Mr. Yeager would have been offered full time permanent employment with FirstEnergy had he completed an internship, and on this basis declined to award him further damages. (*Id*.) The EEOC eventually dismissed the complaint before it, citing the "[a]dministrative [d]ecision."

FirstEnergy appealed the OCRC's findings to the Summit County, Ohio Court of Common Pleas. Mr. Yeager was not a party to the appeal, but the OCRC appeared to defend its ruling. The common pleas court affirmed liability based on FirstEnergy's failure to accommodate Mr. Yeager's religious beliefs. In so doing, the common pleas court found

reliable, probative, and substantial evidence of religious discrimination. The OCRC's damages award was not challenged on appeal.

In the instant matter, Mr. Yeager makes claims pursuant to Title VII which are identical to those made in his OCRC and EEOC charges and in the administrative proceeding before the OCRC. In this case, as in the state administrative proceeding, Mr. Yeager claims that FirstEnergy engaged in religious discrimination stemming from FirstEnergy's requirement that Plaintiff use its direct deposit system.

Presently, Mr. Yeager moves to amend his complaint in this matter. FirstEnergy opposes the motion to amend, and also seeks an order striking Mr. Yeager's jury demand. Further, Mr. Yeager requests the Court to issue an order compelling certain discovery. The Court turns now to these motions.

## II. LAW AND ANALYSIS

### A. Motion to Amend the Complaint

Mr. Yeager does not assert new facts in his proposed amended complaint, but rather seeks to amend his pleading to add claims under Title VII for certain compensatory damages (apparently including additional back pay and front pay not awarded by the OCRC and emotional distress damages), punitive damages, and a trial by jury. Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted). A district court should grant the motion "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief * * *." *Id.* However, undue delay, bad faith, dilatory motives, failure to cure deficiencies by prior amendments, or futility weigh against the plaintiff. *Id.*

FirstEnergy argues that Mr. Yeager should not be permitted to amend his complaint at this juncture, in part because amendment would be futile. Specifically, FirstEnergy argues that Mr. Yeager may not re-litigate any issues regarding liability, reinstatement, back pay, or front pay under Title VII because those claims are barred by *res judicata* where they were decided by the OCRC, and an appeal was taken from the administrative order. This Court agrees that *res judicata* precludes further litigation of liability, reinstatement, back pay, or front pay to which Mr. Yeager believes he is entitled.

To determine whether to give preclusive effect to an Ohio state court or administrative determination, a federal court looks to Ohio law on *res judicata*. *See Knott v. Sullivan*, 418 F.3d 561, 567 (6th Cir. 2005). In Ohio, "[t]he doctrine of *res judicata* encompasses the two related concepts of (1) claim preclusion, also known as *res judicata* or estoppel by judgment, and (2) issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 61 (2007). "Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id.* The previous action is conclusive for all claims that were – or could have been – litigated in the first action. *Schachter v. Ohio Pub. Emps. Ret. Bd.*, 121 Ohio St.3d 526, 530 (2009). Issue preclusion, or collateral estoppel, "'precludes the re[-]litigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.'" *Davis v. Pub. Emps. Ret. Bd.*, 120 Ohio St.3d 386, 392 (2008) (quoting *Ft. Fry Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998)).

*Res judicata*, whether claim preclusion or issue preclusion, applies to decisions of administrative agencies acting in a judicial capacity, as the OCRC did here. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421 (1966); *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995); *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012). An administrative proceeding is quasi-judicial for purposes of *res judicata* if the parties have had an ample opportunity to litigate the issues involved in the proceeding. *Set. Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals*, 31 Ohio St.3d 260, 263 (1987). The federal courts also consistently give preclusive effect to issues decided by state courts. *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). "Thus, [estoppel by judgment] and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.*

Here, the OCRC administrative proceedings were quasi-judicial in that they involved multiple hearings during which Mr. Yeager was represented by counsel, could present evidence, had the ability to cross examine FirstEnergy's witnesses, and could make legal arguments. Thus, if other requirements of *res judicata* are met, the OCRC findings could be accorded *res judicata* effect to bar re-litigation of claims that were litigated, or could have been litigated, in the OCRC proceedings. Specifically, *res judicata* is available to preclude Mr. Yeager from re-litigating FirstEnergy's liability or claims for reinstatement, back pay, or front pay in federal court under Title VII.

Indeed, as is required for *res judicata* to apply to Mr. Yeager's claims regarding liability, back pay, front pay, and reinstatement brought under Title VII, Mr. Yeager had a full and fair opportunity to litigate these claims before the OCRC. Notably, the Title VII

5

claims are based on the identical set of facts underlying the OCRC charge, and arise out of Mr. Yeager's termination from the internship program with FirstEnergy. The administrative proceedings that Mr. Yeager participated in resembled a trial. As mentioned, Mr. Yeager had an opportunity to be heard, present evidence, cross examine FirstEnergy's witnesses, and make legal arguments before the OCRC. *See R.C. 4112.05*. Mr. Yeager was represented by counsel, with the Ohio Attorney General also advocating on his behalf by seeking to uphold the probable cause finding initially issued by the OCRC. After a lengthy and exhaustive adversarial proceeding on Mr. Yeager's claim of religious discrimination under Ohio Revised Code Chapter 4112, in which Mr. Yeager undisputedly participated, the Administrative Law Judge, and ultimately the OCRC, issued a decision on both liability and Mr. Yeager's damages. It bears noting that the elements under R.C. 4112 and the religious discrimination provisions in Title VII are identical. Indeed, Ohio courts look to interpretations of Title VII to adjudicate claims brought under R.C. 4112. *See Genero v. Cent. Transport*, 84 Ohio St.3d 293, 298 (1999). After extensive litigation and the presentation of evidence by both Mr. Yeager and FirstEnergy, the OCRC found FirstEnergy liable and awarded Mr. Yeager back pay totaling $12,904.31. The OCRC concluded that Mr. Yeager was entitled only to compensation for participation in the internship program, and not for a permanent position at FirstEnergy, a finding that was not appealed.

Mr. Yeager appears to argue that there can be no preclusive effect accorded to the OCRC proceedings, because he "abandoned" the administrative action before the OCRC by not participating in the appeal of the OCRC's decision to the Summit County Court of Common Pleas. He argues that, under *Smith v. Friendship Village of Dublin, Ohio, Inc.*,

92 Ohio St.3d 503 (2001), he was entitled to "abandon" the appeal and proceed with a lawsuit under R.C. 4112 in state court or under Title VII in federal court and therein reassert his claims for discrimination, reinstatement, back pay, and front pay unencumbered by any preclusive effect arising from the OCRC proceeding. This Court disagrees under the circumstances present here.

In *Smith*, the OCRC found no probable cause to support the plaintiff's charge of discrimination. *Id.* at 503. The OCRC then issued a final order concluding that the evidence did not substantiate the plaintiff's claim that she was discharged for discriminatory and retaliatory reasons. *Id.* at 504. The plaintiff did not seek judicial review of the order under R.C. 4112.06, but rather filed a civil lawsuit pursuant to R.C. 4112.99. *Id.* The trial court granted summary judgment against the plaintiff, finding that the plaintiff could not file an independent action in the common pleas court because she had already elected an administrative remedy before the OCRC. *Id.* On appeal, the Supreme Court of Ohio considered whether a plaintiff has made an election of remedies between administrative proceedings before the OCRC and a civil lawsuit when the plaintiff pursues a discrimination claim with the OCRC, the OCRC responds unfavorably, and the claimant abandons the administrative appeal process. *Id.* The court answered the question in the negative. The Supreme Court of Ohio ultimately held that an appellee is not "barred from filing [a] complaint with the trial court pursuant to R.C. 4112.99 simply because she had previously filed an administrative claim pursuant to R.C. 4112.05." *Id.* (internal quotations omitted).

Contrary to Mr. Yeager's position, *Smith* does not control whether *res judicata* applies in the instant action, for several reasons. First, in *Smith*, the Supreme Court of Ohio

7

decided whether the plaintiff alleging discrimination had made an election of remedies, but did not consider whether preclusive effect may be given to an administrative finding in a subsequently-filed civil action, when a final order has been entered in the administrative action and an appeal taken therefrom. Moreover, even if the Supreme Court of Ohio had considered and declined to apply *res judicata* in *Smith*, that case is factually distinguishable from the instant case. Unlike the situation here, the plaintiff in *Smith* received a no probable cause determination from the OCRC. Courts understandably are reluctant to apply *res judicata* in such situations, because a no probable cause determination may be made without the benefit of an adversarial process that resembles a trial and an opportunity for the complainant to present evidence, although this is not always the case. *But c.f. Herrera,* 680 F.3d at 550 (federal claims were precluded by decision in state administrative proceeding where no probable cause finding issued but plaintiff had the opportunity to present evidence in support of his discrimination claim). In this case, however, it is undisputed that Mr. Yeager, after receiving a probable cause determination from the OCRC, actively participated in a multiple hearings before the OCRC where he was represented by counsel and could present evidence, testify, cross-examine FirstEnergy's witnesses, and present legal arguments. Because the OCRC acted in a judicial capacity in this case, its decision is eligible to receive preclusive effect if other requirements are met, and this Court must give its decision the same preclusive effect that it would receive in state court. *See Utah Constr. & Mining Co.*, 384 U.S. at 421; *Grava*, 73 Ohio St.3d at 379, 381.

Also unlike in *Smith*, in Mr. Yeager's case an appeal from the OCRC's final order was made to the common pleas court. Mr. Yeager's claim that he "abandoned" the

administrative process because he did not avail himself of the opportunity to participate that appeal rings hollow under the circumstances present here. Although Mr. Yeager may have chosen to forgo entering the appeal, he was in privity with the OCRC for purposes of the appeal to the extent that such privity is required for the application of *res judicata*. *Res judicata* principles can apply to prevent parties – and those in privity with the parties – from modifying or collaterally attacking a previous judgment. Although the concept of privity for *res judicata* purposes is somewhat amorphous, the Supreme Court of Ohio has applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine. *Schachter*, 121 Ohio St.3d at 532 . Privity does not require a contractual or beneficiary relationship. *Id.* (citing *Brown v. Dayton*, 89 Ohio St.2d 245, 248 (2007)). Instead, a "'mutuality of interest, including an identity of desired result,'" might support privity. *O'Nesti*, 113 Ohio St.3d at 62 (quoting *Brown*, 89 Ohio St.3d at 248). Mutuality may only exist if both the party and the potential privy would be bound by the result of the judgment. *Schachter*, 121 Ohio St.3d at 532. Here, it is indisputable that Mr. Yeager and the OCRC had a mutuality of interest in the appeal in this matter, as the OCRC appeared in the appeal to defend its finding of liability against FirstEnergy and in favor of Mr. Yeager. Moreover, there is no dispute that both the OCRC and Mr. Yeager were bound by the common pleas court's decision with respect to the findings of the OCRC. Accordingly, the OCRC and Mr. Yeager were in privity to the extent that Mr. Yeager cannot assert that his absence as a party to the appeal prevents the application of *res judicata* in Mr. Yeager's Title VII action.

Moreover, the Supreme Court of Ohio has held that *res judicata* "does not apply merely to those who were parties to the proceeding. It applies likewise to those in privity

with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity." *Howell v. Richardson*, 45 Ohio St.3d 365, 367 (1989) (finding claim preclusion); *see also Herrera*, 680 F.3d at 550 (a plaintiff's failure to avail himself of the state administrative appeal process does not permit him to re-litigate the same issues in federal court). Mr. Yeager does not argue that there was any impediment to his participation in the appeal in the court of common pleas. He simply did not avail himself of the opportunity to enter the appeal that was filed and challenge the OCRC's order as to liability, reinstatement, back pay, or front pay. Accordingly, he is precluded by *res-judicata* from re-litigating those claims here. *See Herrera*, 650 F.3d at 550.

In view of the foregoing, *res judicata* prevents Mr. Yeager from pursuing under Title VII his claims for discrimination, reinstatement, back pay, and front pay that were fully litigated before the OCRC, and were further argued or could have been argued on appeal from the administrative order. Any dissatisfaction that Mr. Yeager may now have with the results of the previous litigation does not provide an exception to the well-settled principles of *res judicata*. Accordingly, to the extent Mr. Yeager's proposed amendments to the complaint in the present action encompass claims for liability, discrimination, reinstatement, back pay, and front pay, leave to amend the complaint to include these claims is denied as futile.

Apart from the issues of liability, reinstatement, back pay, and front pay, Mr. Yeager argues that he is entitled to maintain a Title VII action for compensatory damages (apart from back pay and front pay) and punitive damages. In support of his argument, Mr. Yeager contends that *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54 (1980) supplants

the Court's normal approach to preclusion and permits a complaint under Title VII solely for damages not obtainable in the state administrative proceeding.

In *Carey*, the Supreme Court held that Title VII "authorize[s] a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state administrative and judicial proceedings to which the complainant was referred pursuant to the provisions of Title VII." *Carey*, 447 U.S. at 71. In sum, a complainant who succeeds on a discrimination claim that is filed in a state administrative agency and that is upheld on appeal can sue in federal court under Title VII to recover attorney's fees that were incurred in the state proceeding but that are not awardable under state law. *Id.* at 66-68. In holding that Congress intended to authorize a suit under Title VII "solely to obtain an award of attorney's fees for legal work done in state and local proceedings" regardless of whether such a claim for fees would be permissible under state law, the Court did not consider Title VII to have preempted state law. Rather, the Court considered the federal action for damages to be a "supplement" to state remedies "when the state does not provide prompt or complete relief." *Id.* at 65-68. The Court held that "Title VII [] provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums." *Id.* at 67-68.

The *Carey* Court specifically addressed supplemental relief in the form of attorney's fees, however, the Court did suggest (albeit in possible dicta) that other supplemental relief might be pursued under Title VII when that relief is unavailable in the state administrative forum. Specifically, the Court stated that, "[I]f state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to 'supplement' the

state remedy." *Id.* at 466. While the *Carey* Court did not address punitive damages or compensatory damages other than backpay, at least one federal appellate court faced with facts similar to those present here has interpreted *Carey's* holding to permit a discrimination plaintiff to maintain a Title VII action in federal court to recover compensatory and punitive damages after prevailing on a discrimination complaint before a state administrative body and an appeal to the state courts. *See Nestor v. Pratt & Whitney*, 466 F.3d 65 (2nd Cir. 2006). In *Nestor*, the appellate court read *Carey* together with the Supreme Court's decision in *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982) "as holding that a state court's decision on the merits of a discrimination claim is entitled to full faith and credit, but that Title VII permits a claimant to seek – in federal court – 'supplemental' relief [including compensatory and punitive damages] that was unavailable in the state court." *Nestor*, 466 F.3d at 72.

The *Nestor* court's analysis of *Carey* suggests that Mr. Yeager may pursue a Title VII action for supplemental relief in the form of compensatory and punitive damages, even though re-litigation of a substantive discrimination claim is precluded. FirstEnergy has not addressed *Carey* and its progeny nor cited any other authority to the contrary. Further, FirstEnergy does not dispute that compensatory and punitive damages were unavailable to Mr. Yeager in the administrative proceeding before the OCRC. Indeed, although the General Assembly amended R.C. 4112.05(G) to expressly grant the OCRC the power to award compensatory and punitive damages for violations of R.C. 4112.02(H), that section of the revised code is not applicable here. Accordingly, this Court grants Mr. Yeager leave to amend his complaint to include claims for compensatory and punitive damages. In so doing, the Court notes that Mr. Yeager was not required to seek leave to amend the

complaint to pursue attorney's fees accrued in the state forum because a claim for attorney's fees was included both in the original and proposed amended complaints.

### B. Motion to Strike Jury Demand

FirstEnergy moves to strike Mr. Yeager's jury demand contained in the amended complaint on the ground that it was filed out of time under Federal Rule of Civil Procedure 38. This Court agrees that the jury demand is untimely and must be stricken.

Rule 38 provides that a party may demand a jury trial on any issue that is triable of right by a jury by serving upon the other parties a written demand "no later than 14 days after the last pleading directed to the issue was served." Fed. R. Civ. P. 38(b)(1). Failure to serve and file a jury demand as required by Rule 38 results in a waiver of that right. Fed. R. Civ. P. 38(d). As recognized by the Sixth Circuit, "'[s]uch a waiver is complete and binding even though it was inadvertent and unintended and regardless of the explanation or excuse.'" *Root v. Consol. Freightways*, Case No. 86-6149, 1987 WL 24092, *1 (6th Cir. 1987) (internal quotations omitted).

An amended complaint does not necessarily revive the time to file a jury demand unless that amended complaint raises new issues. *Fredieu v. Rowan Companies, Inc.*, 738 F.2d 651, 652 (5th Cir. 1984). An amended complaint that merely restates previously raised issues will not revive the right to demand a jury trial if that right has already been waived. *Irvin v. Airco Carbide*, 837 F.2d 724, 727 (6th Cir. 1987). To revive the jury demand, the "new issues" raised by the amended complaint must involve new issues of fact. *Fredieu*, 738 F.2d at 653; *accord AMC Demolition Specialists v. Bechtel Jacobs Co., LLC*, Case No.3:04CV466, 2005 WL 3240576 (E.D. Tenn. 2005).

13

In this case, it is undisputed that Mr. Yeager failed to file a timely jury demand as required by Rule 38(b) of the Federal Rules of Civil Procedure. Neither Mr. Yeager's March 3, 2015 complaint nor FirstEnergy's March 25, 2015 answer contained a jury demand. Under Rule 38(b)(1), Mr. Yeager had to file a jury demand by April 9, 2015. He did not do so. Mr. Yeager did not file his first motion for leave to file an amended complaint with jury demand until May 19, 2015, beyond the time period proscribed by Rule 38. Moreover, although the amended complaint currently before the Court pursuant to a renewed motion to amend also contains a jury demand, Mr.Yeager has never been granted leave to file an amended complaint prior to the date of this Order. Accordingly, Mr. Yeager's jury demand is out of time under Rule 38(b), and he has waived his right to make such a demand.

In addition, the proposed amended complaint currently before the Court does not set forth any new facts as are required to revive the right to demand a jury trial. *Irvin*, 837 F.2d at 727; *Friedieu*, 738 F.2d at 653. Mr. Yeager argues that a new claim for emotional distress is sufficient to revive that right. The Court disagrees. The mere assertion of a new legal theory based on facts previously pled does not constitute a new issue of fact required to revive the right to demand a jury trial. *Irvin*, 837 F.2d at 727; *Clement v. Am. Greetings Corp.,* 636 F. Supp. 1326 (S.D. Cal. 1986).

For the reasons stated, Mr. Yeager is not entitled to demand a jury trial. The jury demand contained in Mr. Yeager's amended complaint is stricken.

### C. Motion to Compel Discovery

Mr. Yeager has filed a motion to compel certain discovery. FirstEnergy in its response to the motion to compel states that it has now provided the requested discovery responses. Mr. Yeager does not dispute FirstEnergy's contention. Accordingly, Mr. Yeager's motion to compel is denied as moot.

## III. CONCLUSION

For the reasons stated, the Court holds the following:

1. Mr. Yeager's motion to amend the complaint (Doc. #22) is GRANTED IN PART. Specifically, Mr. Yeager may not amend the complaint to re-litigate issues of FirstEnergy's liability for discrimination, back pay, front pay, or reinstatement. He may, however, add claims for other compensatory and punitive damages.

2. FirstEnergy's motion to strike the jury demand (Doc. # 25) is GRANTED.

3. Mr. Yeager's motion to compel discovery (Doc. # 30) is DENIED AS MOOT.

**IT IS SO ORDERED.**

          ___s/John R. Adams_____
          JOHN R. ADAMS
          UNITED STATES DISTRICT JUDGE

**DATED**: ____6/28/17_____